**SEA–LAND SERVICE, INC., Appellant,**

v.

**U.S.A.**

**No. 90–5132**

United States Court of Appeals,
Third Circuit.

Argued Aug. 21, 1990.

Decided Nov. 29, 1990.

Stephen K. Carr (argued), Richard A. Menchini, Sharon Elliot, Haight, Gardner, Poor & Havens, New York City, Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, N.J., for appellant.

Stuart M. Gerson, Asst. Atty. Gen., Samuel A. Alito, U.S. Atty., J. Patrick Glynn, Director, David S. Fishbach, Asst. Director, J. Charles Kruse, Sp. Litigation Counsel, Steven M. Talson (argued), Trial Atty., Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for appellee.

Before STAPLETON, COWEN and WEIS, Circuit Judges.

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

In 1979, David W. Swogger brought suit in a state court against five shipowners, including Sea–Land Service, Inc. ("Sea–Land"). Swogger sought recovery for asbestos-caused personal injuries incurred as a result of his service from 1949 to 1978 aboard vessels owned by the five shipowners. After Swogger died in 1980, the suit was converted to a wrongful death action. Sea–Land settled with Swogger's estate in 1985. Because Swogger had served from 1943 to 1948 on United States ships that were built with asbestos, Sea–Land in 1987 filed suit against the United States under the Suits in Admiralty Act ("SAA"), 46 U.S.C.App. §§ 741 et seq., in the United States District Court for the District of New Jersey. The complaint sought contribution and/or indemnity for Sea–Land's settlement with Swogger's estate. The district court dismissed Sea–Land's claims, holding that they were barred by an implied discretionary function exception to the SAA's waiver of sovereign immunity.[1] We have jurisdiction pursuant to 28 U.S.C. § 1291, and our review is plenary. We will affirm the judgment of the district court.

### I.

Sea–Land raises two questions in its appeal: whether the SAA contains a discretionary function exception to its waiver of sovereign immunity and, if so, whether the Government's use of asbestos in ships sailed during and after World War II falls within the exception.

### A.

Although not contained in any explicit provision of the Constitution, the English legal doctrine that the sovereign is immune from any suit to which it has not consented has been applied by courts in this country as vigorously as it had been in England. *Feres v. United States*, 340 U.S. 135, 139, 71 S.Ct. 153, 156, 95 L.Ed. 152 (1950). Thus, it is an "accepted jurisprudential principle that no action lies against the United States unless the legislature has authorized it." *Dalehite v. United States*, 346 U.S. 15, 30, 73 S.Ct. 956, 965, 97 L.Ed. 1427 (1953); *see also Library of Congress v. Shaw*, 478 U.S. 310, 315, 106 S.Ct. 2957, 2962, 92 L.Ed.2d 250 (1986) ("As sovereign, the United States, in the absence of its consent, is immune from suit.").

The Supreme Court has used strict standards to determine when Congress has consented to suit and thereby waived the sovereign immunity of the United States. The Court has stated that "a waiver of sovereign immunity cannot be lightly implied, but must be unequivocally expressed." *United States v. Mottaz*, 476 U.S. 834, 851, 106 S.Ct. 2224, 2234, 90 L.Ed.2d 841 (quoting *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980)). Waivers of sovereign immunity are to be construed "strictly in favor of the sovereign." *Library of Congress*, 478 U.S. at 318, 106 S.Ct. at 2963.[2]

---

1. The United States District Court originally dismissed the action as barred by the statute of limitations. We reversed and remanded for further proceedings. *Sea–Land Service, Inc. v. United States*, 874 F.2d 169 (3d Cir.1989).

2. Similarly, Congress must clearly express its intent in order to abrogate a state's Eleventh Amendment sovereign immunity. *See Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985) ("Congress may abrogate the States' constitu-

Thus, even when Congress has used somewhat open-ended language in a statute that waives the immunity of the United States, the Court has not construed the waiver as broadly as the language of the statute would permit. For example, in *Library of Congress*, 478 U.S. at 319–20, 106 S.Ct. at 2963–64, the Court, in determining that Title VII did not waive sovereign immunity for awards of interest, stated that "[o]ther statutes placing the United States in the same position as a private party also have been read narrowly to preserve certain immunities that the United States has enjoyed historically." In *Laird v. Nelms*, 406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972), the Court held that although the Federal Tort Claims Act imposed liability on the United States for the "negligent or wrongful act or omission of any employee of the Government ...", under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred," the United States was nonetheless not liable for the entire range of conduct classified as tortious under state law.

■ Moreover, when the issue is whether Congress has waived sovereign immunity for the consequences of governmental policymaking, courts have recognized the sensitive nature of the issue and have declined to find a waiver absent unmistakable evidence of such an intent. As Professor Davis has observed "the process of governing almost always helps some and hurts others." 5 K. Davis, *Administrative Law Treatise* § 27.11 (1983). As a result, the imposition of liability for damages occasioned by governmental policymaking would necessarily involve a very substantial, if not prohibitive, social cost not only in terms of the imposed liability itself, but also in terms of the constraining effect of that liability on the decisions of governmental policymakers. In the absence of compelling evidence to the contrary, we will decline to assume that Congress intended to impose that social cost on the federal government.

■ Against this backdrop, we turn to the Federal Tort Claims Act ("FTCA") and the SAA. The FTCA, 28 U.S.C. § 1346(b), which Congress enacted in 1946, waives sovereign immunity in suits against the United States for injuries or losses caused by the negligent or wrongful act or omission of any employee of the government under circumstances where a private person would be liable to the claimant. The Act contains an explicit exception, known as the discretionary function exception, which excludes any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

The SAA was enacted in 1920, over twenty-five years before the FTCA.[3] It provides that in "cases where if [a United States] vessel were privately owned or operated, ... a proceeding in admiralty could be maintained, any appropriate nonjury proceeding in personam may be brought against the United States." 46 U.S.C.App. § 742. The United States operated merchant marine vessels during World War II under the auspices of the War Shipping Administration. Executive Order 9054, 3 C.F.R. 1086 (1938–43), *reprinted in* 1942 U.S.C.S. 154. Unlike the FTCA, the SAA does not contain an explicit discretionary function exception. That raises the first

tionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute."); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984) (Court must find "unequivocal expression of congressional intent" to conclude that Congress abrogated the States' immunity).

**3.** Congress amended the SAA in 1960 in order to clarify jurisdictional boundaries among the Suits in Admiralty Act, the Public Vessels Act, the Federal Tort Claims Act, and the Tucker Act. *United States v. United Continental Tuna Corp.*, 425 U.S. 164, 172–73, 96 S.Ct. 1319, 1324–25, 47 L.Ed.2d 653 (1976); *see also* S.Rep. No. 1894, 86th Cong., 2d Sess. (1960); *Canadian Transport Co. v. United States*, 663 F.2d 1081, 1085–86 (D.C.Cir.1980). The 1960 amendments are not relevant to this case.

question in this appeal: Is there a discretionary function exception to the SAA notwithstanding the lack of an express provision to that effect?

Although the FTCA contains an explicit discretionary function exception to its waiver of sovereign immunity, the Supreme Court has indicated that the exception merely makes explicit what would otherwise be implicit:

> It was believed that claims of the kind embraced by the discretionary function exception would have been exempted from the waiver of sovereign immunity by judicial construction; nevertheless, the specific exception was added to make clear that the Act (FTCA) was not to be extended into the realm of the validity of legislation or discretionary administrative action.

*United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 810, 104 S.Ct. 2755, 2762, 81 L.Ed.2d 660 (1984).

We understand *Varig* to teach that, as a matter of judicial construction, we should not read a general waiver of sovereign immunity to include a waiver of immunity with respect to damage occasioned by policy decisions. Accordingly, we hold that the SAA, which explicitly contains only a general waiver, also implicitly contains a discretionary function exception to its waiver of sovereign immunity.

With one exception, every court of appeals that has considered the question has agreed with our conclusion. *In re Joint Eastern and Southern Districts Asbestos Litigation*, 891 F.2d 31 (2d Cir.1989); *Wiggins v. United States*, 799 F.2d 962 (5th Cir.1986); *Bearce v. United States*, 614 F.2d 556 (7th Cir.), *cert. denied*, 449 U.S. 837, 101 S.Ct. 112, 66 L.Ed.2d 44 (1980); *Canadian Transport Co. v. United States*, 663 F.2d 1081 (D.C.Cir.1980); *Gercey v. United States*, 540 F.2d 536 (1st Cir.1976), *cert. denied*, 430 U.S. 954, 97 S.Ct. 1599, 51 L.Ed.2d 804 (1977). The lone court of appeals case coming to the opposite conclusion is *Lane v. United States*, 529 F.2d 175, (4th Cir.1975).

In *Lane*, 529 F.2d at 179, the court concluded that there was "no basis upon which we can import the many exceptions in the Tort Claims Act into the Suits in Admiralty Act, where the United States is to be held accountable in admiralty whenever a private person, in similar circumstances, would be." We disagree with both the Fourth Circuit's conclusion and its characterization of the conclusion we here reach. We are not importing an exception from one act to another; instead, we are acknowledging that Congress must speak with unmistakable intent in order to waive tort immunity for the government's discretionary functions. Accordingly, we agree with the courts of appeals other than that for the Fourth Circuit in holding that the SAA contains an implied discretionary function exception to its waiver of sovereign immunity.

### B.

Sea–Land claims that even if the SAA contains a discretionary function exception to its waiver of sovereign immunity, the conduct of the United States in this case does not fall within the exception. It makes four arguments to support this claim. We will consider these in turn.

First, Sea–Land argues that the use of asbestos in ships was not the result of any affirmative decision. In deciding whether the discretionary function exception applies in a particular case, the Supreme Court stated in *Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), that a court must at the outset consider whether the action is a matter of choice for the acting employee. The discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. Then, a court must determine whether the judgment involved in the challenged conduct is of the kind that the discretionary function exception was designed to shield. The exception protects only governmental actions and decisions based on considerations of public policy. Where there is room for policy judgment and decision, there is discretion.

In summary, the Court stated that "the discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment." *Berkovitz*, 486 U.S. at 537, 108 S.Ct. at 1959.

In determining whether the action of the government involves the permissible exercise of policy judgment, we need not examine the record for evidence of a conscious policy decision regarding the use of asbestos in ship construction. The relevant inquiry is whether the use of asbestos is a matter "susceptible to policy analysis." *United States Fidelity & Guaranty Co. v. United States*, 837 F.2d 116, 121 (3d Cir.), *cert. denied*, 487 U.S. 1235, 108 S.Ct. 2902, 101 L.Ed.2d 935 (1988). An oversight or a failure to weigh the relevant factors does not affect whether we treat the conduct as a matter susceptible to policy analysis. As the Sixth Circuit pointed out in *Myslakowski v. United States*, 806 F.2d 94, 97–98 (6th Cir.1986), *cert. denied*, 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 793 (1987), if the negligent failure of a government policymaker to consider all relevant aspects of a matter was not within the exception, the discretionary function exception would be illusory.

In this case, the government's use of asbestos in ships built during its rapid World War II ship construction program was a matter susceptible to policy analysis. In the prosecution of World War II, the War Shipping Administrator determined that "[t]he utmost use [must be] squeezed out of each vessel" and that "[e]very attempt [would be] made to plan and organize the use of the fleet at maximum efficiency." Report of the War Shipping Administrator to the President, *The United States Merchant Marine at War* 41 (Jan. 15, 1946). The Administrator was delegated authority to operate and use the vessels "in order to assure the most effective utilization of the shipping of the United States for the successful prosecution of the war." Executive Order 9054, 3 C.F.R. 1086 (1938–43), *reprinted in* 1942 U.S.C.S. 154.

In pursuing that goal, the choice of materials was one of a number of factors to consider in order to produce in a short time ships that would do the best job at the least cost. As the Second Circuit stated, "During the war, the government was faced with a desperate need to place merchant ships upon the seas. The decisions to operate existing ships, which contained asbestos, and to employ existing designs and materials, including asbestos, in the construction of new ships were not prescribed by any federal statute, regulation, or policy, save for the ultimate policy of saving the nation." *Asbestos Litigation*, 891 F.2d at 37; *see also Gordon v. Lykes Brothers Steamship Co., Inc.*, 835 F.2d 96, 100 (5th Cir.1988) ("the government has provided a substantial amount of historical evidence showing that the use of asbestos was consistent both with the policy of building the ships rapidly and the existing standard design. In both cases officials chose from among important alternative courses of action."). We agree that the use of asbestos in ships, whether traceable to a conscious decision or not, was a policy judgment that is within the discretionary function exception.

Sea–Land's second argument is that even if the operation of ships with asbestos during wartime was a policy judgment subject to the discretionary function exception, the operation of ships after the war is not within the exception. We disagree. The use after the war of ships that contained asbestos, like the use of such ships during the war, presented a significant question of resource allocation and was a "matter susceptible to policy analysis." Again, we need not find evidence of a conscious policy decision.

Sea–Land's third argument concerns the government's failure to warn of the dangers of asbestos. This argument confuses negligence with immunity; the government may be negligent but nevertheless immune from tort liability. The government's failure, both during and after the war, to warn of the potential health risks of asbestos once it learned of them was a matter susceptible to policy analysis and within the discretionary function exception. As the Fifth Circuit stated, this was a choice "similar" to the choice to use asbestos in the

first instance. *Gordon,* 835 F.2d at 100; *see also Shuman v. United States,* 765 F.2d 283, 290 (1st Cir.1985) ("Lack of due care in promulgating a policy for [asbestos safety], or in having no policy or program at all upon [such] an issue, is encompassed within the discretionary function exception.").

Finally, Sea–Land argues that the warranty of seaworthiness, a maritime common law duty, imposed a mandatory duty on government officials to provide seaworthy ships. This argument misperceives the discretionary function exception. Once we have determined that an act was an exercise of policy judgment within the discretionary function exception, our inquiry is at an end. If the conduct is the product of policy decisionmaking, it makes no difference what standard of care is imposed by the law regulating private conduct. The warranty of seaworthiness is thus irrelevant to our decision in this case.

## II.

We hold that the Suits in Admiralty Act contains an implied discretionary function exception to its waiver of sovereign immunity and that the Government's conduct in this case falls within that implied discretionary function exception. Therefore, we will affirm the district court's judgment in favor of the United States.