**PUBLISH**

**UNITED STATES COURT OF APPEALS**

Filed 6/17/96

**TENTH CIRCUIT**

---

BETTY TEW, individually; BETTY
TEW and DENNIS SHOOK as co-
personal representatives of the estate
of Robert Garriett Tew, deceased,

Plaintiffs - Appellants,

v.

UNITED STATES OF AMERICA,

Defendant - Appellee.

No. 95-7050

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
(D. C. No. CV-94-299-S)**

---

Steven N. Moran (Gregory G. Meier with him on the briefs), of Jones, Givens,
Gotcher & Bogan, Tulsa, Oklahoma, for Plaintiff-Appellant.

Matthew A. Connelly, Trial Attorney, U.S. Department of Justice, Washington,
DC, for Defendant-Appellee.

---

Before SEYMOUR, Chief Judge, PORFILIO and TACHA, Circuit Judges.

---

TACHA, Circuit Judge.

---

## Background

On June 6, 1992, Robert Tew drowned in the Illinois River when his raft capsized after passing over an underwater structure near Tahlequah, Oklahoma. The structure was a roadway and low-water dam constructed by a private citizen without governmental approval. The Department of the Army Corps of Engineers ("Corps") was aware of the structure, but neither it nor the United States Coast Guard ("Coast Guard") had placed any signs or markers on the river warning of the danger.

Tew's mother and the representatives of his estate brought this action against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-80, and the Suits in Admiralty Act ("SAA"), 46 U.S.C. §§ 741-52, alleging that the Corps and the Coast Guard negligently failed to mark or remove the structure from the river. The United States moved to dismiss for lack of subject matter jurisdiction. The district court converted the motion into a motion for summary judgment and then granted it in favor of the United States. The district court dismissed the FTCA claim because the alleged negligence fell under the discretionary function exception to the FTCA. The court dismissed the SAA claim on the grounds that the Illinois River was not navigable for purposes of admiralty jurisdiction and that, in any case, the discretionary function exception also applies to the SAA.

The plaintiffs now appeal, arguing that the district court erred by (1) improperly applying the FTCA's discretionary function exception, (2) finding that

the Illinois River was not navigable for purposes of admiralty jurisdiction, and (3) creating a discretionary function exception to the SAA. We exercise jurisdiction pursuant to 28 U.S.C. § 1291. We hold that the district court properly applied the FTCA's discretionary function exception and properly found and applied a discretionary function exception to the SAA. Thus, without reaching the issue of the navigability of the Illinois River for the purposes of admiralty jurisdiction, we affirm.

**Discussion**

We review the grant of summary judgment de novo. Wolf v. Prudential Ins. Co. of Am., 50 F.3d 793, 796 (10th Cir. 1995). The United States, as sovereign, is immune from suit unless it consents to be sued. United States v. Mitchell, 445 U.S. 535, 538 (1980). Both the FTCA and the SAA are waivers of sovereign immunity. The FTCA waives the United States' sovereign immunity when federal employees are negligent within the scope of their employment under circumstances in which private individuals would be liable. See 28 U.S.C. §§ 2674, 1346(b). However, the discretionary function exception provides that the FTCA's waiver of sovereign immunity does not apply to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government . . . ." 28 U.S.C. § 2680(a).

The SAA waives the United States' sovereign immunity for the purpose of maintaining suits in admiralty. 46 U.S.C. § 742. In order to resolve the issues in this case, we must initially consider whether the discretionary function exception to the FTCA also applies to the SAA, a question of first impression before this court. The discretionary function exception is grounded in the doctrine of the separation of powers. The separation of powers is "a doctrine to which the courts must adhere even in the absence of an explicit statutory command." Canadian Transp. Co. v. United States, 663 F.2d 1081, 1086 (D.C. Cir. 1980). Were we not to find a discretionary function exception to the SAA, we would subject "all administrative and legislative decisions concerning the public interest in maritime matters . . . to independent judicial review in the not unlikely event that the implementation of those policy judgments were to cause private injuries." Gercey v. United States, 540 F.2d 536, 539 (1st Cir. 1976), cert. denied, 430 U.S. 954 (1977). Because "[s]uch an outcome is intolerable under our constitutional system of separation of powers," In re Joint E. and S. Dists. Asbestos Litig., 891 F.2d 31, 35 (2d Cir. 1989), we hold that a discretionary function exception is implied in the SAA.

In finding a discretionary function exception to the SAA, we join the majority of the circuits that have addressed this question. Chute v. United States, 610 F.2d 7, 11-13 (1st Cir. 1979), cert. denied, 446 U.S. 936 (1980); In re Asbestos Litigation, 891 F.2d at 35; Sea-Land Serv., Inc. v. United States, 919 F.2d 888, 891 (3d Cir.

1990), cert. denied, 500 U.S. 941 (1991); Wiggins v. United States, 799 F.2d 962, 966 (5th Cir. 1986); Gemp v. United States, 684 F.2d 404, 408 (6th Cir. 1982); Bearce v. United States, 614 F.2d 556, 558-60 (7th Cir.), cert. denied, 449 U.S. 837 (1980); Earles v. United States, 935 F.2d 1028, 1030-32 (9th Cir. 1991); Williams v. United States, 747 F.2d 700 (11th Cir. 1984) (per curiam), aff'g Williams ex rel. Sharpley v. United States, 581 F. Supp. 847 (S.D. Ga. 1983); Canadian Transport, 663 F.2d at 1086. Contra Lane v. United States, 529 F.2d 175, 179 (4th Cir. 1975). Although the Fourth Circuit took a contrary view in Lane, that case's effect has been narrowed by subsequent opinions. Tiffany v. United States, 931 F.2d 271, 277 (4th Cir. 1991) (applying discretionary function exception to the SAA on constitutional separation of powers grounds), cert. denied, 502 U.S. 1030 (1992); Faust v. South Carolina State Highway Dept., 721 F.2d 934, 938-40 (4th Cir. 1983) (applying discretionary function exception analysis to a claim under the SAA), cert. denied, 467 U.S. 1226 (1984).

In order to fall within the discretionary function exception, conduct must (1) involve an element of judgment or choice and (2) be grounded in public policy considerations. Berkovitz v. United States, 486 U.S. 531, 536-37 (1988); Kiehn v. United States, 984 F.2d 1100, 1102-03 (10th Cir. 1993). The conduct at issue here is the United States's failure to mark or remove the underwater structure. We must determine whether these alleged governmental duties fulfill the two requirements of

the discretionary function exception.

The plaintiffs argue that the Corps's and Coast Guard's duty to mark or remove the underwater structure arises out of several statutory and regulatory sources. They first contend that 14 U.S.C. § 86 requires the Corps and the Coast Guard to mark the structure. We initially note that title 14 governs the Secretaries of Transportation and Navy acting through the Coast Guard, not through the Corps of Engineers, and the plaintiffs have failed to point to any authority that imposes a duty on the Corps to mark underwater obstructions. As for the Coast Guard's power to mark obstructions under the statute, its authority clearly involves an element of judgment or choice:

> The Secretary may mark for the protection of navigation any sunken vessel or other obstruction existing on the navigable waters or waters above the continental shelf of the United States in such manner and for so long as, in his judgment, the needs of maritime navigation require.

14 U.S.C. § 86 (emphasis added); Chute, 610 F.2d at 11-13; see also Indian Towing Co. v. United States, 350 U.S. 61, 69 (1955) (noting that the Coast Guard has discretion to determine whether it will undertake the duty of establishing aids to maritime navigation).

The Commandant of the Coast Guard delegated the authority to mark obstructions to the Coast Guard's District Commanders in 33 C.F.R. § 64 (1991). This regulation affords each District Commander no less discretion in such matters than the Secretary of Transportation:

> The District Commander <u>may</u> mark for the protection of maritime navigation any structure, sunken vessel or other obstruction that is not suitably marked by the owner.

33 C.F.R. § 64.30-3(a) (1991) (emphasis added). Thus, the Coast Guard has no duty to mark the underwater structure.

The Coast Guard's discretionary decision to leave the structure unmarked was properly grounded in public policy considerations. Commander John Dejung, the officer responsible for allocating Coast Guard resources in the region, stated that the primary factor in determining the placement of limited Coast Guard resources was whether there was substantial interstate commercial use of a waterway. He noted that even if the Illinois River were a navigable waterway, it would not be economically or operationally feasible to dedicate a Coast Guard river tender to mark the river. Economic considerations such as these are a proper basis for the exercise of discretion. <u>United States v. Gaubert</u>, 499 U.S. 315, 323 (1991). Because the Coast Guard's decision to leave the structure unmarked was both discretionary and properly grounded in public policy considerations, it falls within the discretionary function exception.

The plaintiffs further maintain that 33 U.S.C. §§ 403, 409, 414, and 415 require the Corps to remove the underwater structure. Section 403 prohibits the creation of any obstruction to the navigable capacity of United States waters unless the work has been recommended by the Chief of Engineers and authorized by the

Secretary of the Army. The regulations governing enforcement of this provision are contained in 33 C.F.R. § 326 (1991). Nothing in the regulations requires the Corps to remove obstructions; on the contrary, the regulations state that "[n]othing contained in this Part shall establish a non-discretionary duty on the part of district engineers nor shall deviation from these procedures give rise to a private right of action against a district engineer." 33 C.F.R. §326.1 (1991).

Sections 409, 414, and 415, along with sections 411 and 412, are collectively known as the Wreck Act. Section 409 prohibits the obstruction of navigable waters and places a duty on the owner of an obstruction to mark and remove it. Failure to commence removal of an obstruction allows the Secretary of the Army to remove it under either § 414 (generally) or § 415 (in emergencies). Nothing in the Wreck Act requires the Secretary or the Corps to remove an obstruction. Indeed, § 414 makes clear that an obstruction may be removed by the Secretary "at his discretion." Further, § 415 only provides that the Secretary "shall have the right" to remove an obstruction--it does not mandate that he do so. Our reading of these statutes is confirmed by the Fifth Circuit's interpretation of the Wreck Act in Nunley v. M/V Dauntless Colocotronis:

> In statutory context, the Wreck Act provisions merely authorize the United States to proceed either to mark or to remove the sunken vessel when the owner fails to do so, but they do not impose a mandatory duty on the government to remove the wreck, and, therefore, the United States is not liable to a third party for its failure to do so.

727 F.2d 455, 461 (5th Cir.), cert. denied, 469 U.S. 832 (1984); see also Wyandotte Transp. Co. v. United States, 389 U.S. 191, 207 (1967) (noting that these sections "are intended to protect the United States against liability for removing a sunken vessel if it chooses to do so" (emphasis added)).

In addition, the regulation that governs enforcement of the Wreck Act, 33 C.F.R. § 245 (1991), does not impose a duty on the Corps to remove obstructions. Every subsection of this regulation concerning removal states that District Engineers "may" undertake removal of obstructions. 33 C.F.R. §§ 245.10(c), 245.15, 245.25(b), 245.35, 245.50(a) (1991). The plaintiffs contend that 33 C.F.R. §§ 245.10(d) and 245.20 establish a non-discretionary duty on the Corps and the Coast Guard to jointly determine whether an obstruction poses a hazard to navigation. These regulations, however, are irrelevant: even if the regulations require the Corps to consult with the Coast Guard, the Corps retains discretion under the regulations to remove the obstruction. The plaintiffs also point to 33 C.F.R. §§ 245.10(b) and 245.30(b) to establish a non-discretionary duty on the Corps to send a notice to the owner of the structure and to vigorously pursue removal by that party. These duties, however, only apply when the Corps has already determined that marking or removal are appropriate courses of action, and nothing in the regulations establishes a duty on the Corps to make such a determination. Thus, neither the Wreck Act nor attendant regulations establishes a non-discretionary duty on the Corps to remove the

underwater structure in this case.

The Corps's discretionary decision not to remove the structure was also properly based on public policy considerations. The Corps's Acting District Engineer of the Tulsa District stated that the Corps concentrates on new structures and permit applications because of its limited resources. As mentioned above, the lack of adequate resources is a proper public policy consideration. Because the Corps's decision not to remove the structure was both discretionary and properly grounded in public policy considerations, it falls within the discretionary function exception.

## Conclusion

Both the Federal Tort Claims Act and the Suits in Admiralty Act contain a discretionary function exception to their waivers of sovereign immunity. Because neither the Corps of Engineers nor the Coast Guard had a non-discretionary duty to mark or remove the underwater structure that allegedly caused the death of Robert Tew, the district court was without subject matter jurisdiction to review the claims in this case. Accordingly, we AFFIRM.