299 F.Supp.2d 944 (2003)
AMERICAN BOAT COMPANY, INC.; Underwriters Insurance Co; Navigators Insurance Co., Plaintiffs,
v.
UNKNOWN SUNKEN BARGE; Owner of Unknown Sunken Barge; Unknown Tower of Unknown Sunken Barge; and the United States of America, Defendants.
No. 1:01-CV-21-RWS.
United States District Court, E.D. Missouri, Southeastern Division.
September 2, 2003.
*945 Frank J. Dantone, Joel J. Henderson, Edward D. Lamar, Henderson and Dantone, Greenville, MS, Donald L. Dickerson, Dickerson and Hillcape, Girardeau, MO, for American Boat Co.
Michelle T. Delemarre, U.S. Department of Justice, Torts Branch, Civil Division, Washington, DC, Joseph M. Landolt, Office of U.S. Attorney, St. Louis, MO, for U.S.

MEMORANDUM AND ORDER
SIPPEL, District Judge.
Plaintiff American Boat Company, Inc. ("American Boat") owns the towboat M/V NAVIGATOR. American Boat alleges that Defendant United States of America ("United States") was negligent in its duty to maintain the navigable channel of the lower Mississippi River. Specifically, American Boat alleges that the United States failed to warn of or to remove an obstruction in the Mississippi River which damaged the M/V NAVIGATOR.
The United States has filed a motion for summary judgment for lack of subject matter jurisdiction. The United States argues that its decision(s) to mark or remove obstructions from the river is free from judicial scrutiny as a discretionary function *946 exception to the Suits in Admiralty Act. The United States claims the maintenance work on the navigable channel of the Mississippi River is also immune from scrutiny under the discretionary function exception.
Because the United States' conduct is protected by the discretionary function exception I lack subject matter jurisdiction to hear this claim. The United States Motion for Summary Judgment will be granted.

I. Facts
The Mississippi River Flood Control Act of 1928 authorized the U.S. Army Corps of Engineers ("Corps") to construct and maintain channel stabilization improvements to the Mississippi River. 33 U.S.C. § 702a et seq.
In addition to the Corps authority to maintain the waterway, the United States Coast Guard's mission is to protect the nation's ports and waterways. The United States Coast Guard "may establish, maintain and operate aids to maritime navigation" in furtherance of that mission. 14 U.S.C. § 81.
The Memphis District of the Corps is responsible for maintenance of roughly three hundred and fifty miles of the Mississippi River including the location at issue here known as Little Cypress Bend. The M/V[1] NAVIGATOR, a 7,200 horsepower towboat measuring 192 feet by 52.1 feet, sank in the general area of Little Cypress Bend.
In 1964, the Corps conducted riverbank grading and shore line preservation maintenance on Little Cypress Bend including the placement of revetment[2] which extends along the Mississippi river from Miles 859.7 to 866.5.
In December, 1968 the Waterways Journal reported the sinking of a barge at Mississippi River Mile 867.3, on the right descending bank, outside the navigable channel. The article reported that a tug boat was present, but there was no indication if the barge was scuttled, removed or abandoned. Coast Guard records related to this incident were destroyed in 1997 consistent with the Coast Guard's paper management procedures.
The Coast Guard published a notice identifying the location of a sunken barge at Mississippi River Mile 865.5. The notice was published in the Local Notice to Mariners Wreck Listing beginning in April, 1979 until February, 1987. The Local Notice to Mariners Wreck Listing ceased publication in 1987.
A Corps of Engineers Wreck List for the Memphis District listed a submerged barge, owner unknown, at Mississippi River Mile 865.7 in the right descending side of the navigable channel. The date of this Wreck List is unknown.
In January 1981, a tug boat reported to the Coast Guard that it struck a submerged object at approximately Mississippi River Mile 865.5. The Coast Guard located an object at Mile 865.7 and marked it with a buoy for six weeks. The Coast Guard broadcast Local Notices to Mariners noting the obstruction, the placement of a buoy and the buoy's subsequent removal.
The Corps of Engineers and the Coast Guard entered into a Memorandum of Agreement (MOA) in October 1985 which *947 took effect in early 1986. This MOA was designed to improve "efficiency and effectiveness" of the two agencies specific to their duties to mark and remove obstructions to navigation.
During a period of low river levels in July, 1988, the Coast Guard issued Local Notices to Mariners advising of a sunken barge at Mississippi River Mile 865.2. The Coast Guard placed a buoy at the site at that time. The buoy remained in place for six weeks. A total of six Notice to Mariner messages were issued which identified an obstruction at Mile 865.2 (Nos. 28-88 through 33-88).
The Corps surveys more than 60% of the Mississippi river bed every year to evaluate the condition of the navigable channel. The 1995 survey resulted in maintenance work on the revetment supporting the riverbank at Little Cypress Bend. The Corps conducted two additional, more detailed surveys[3] of the river bottom and river bank prior to beginning any maintenance work. None of the three surveys revealed an underwater obstruction. The repair work to support the river bank included placing articulated concrete mattress (ACM)[4] along the riverbank. The branch of the Corps that did the maintenance work on the riverbank in 1995, was not aware of the wreck list maintained by the Memphis District of the Corps.
During another period of low river levels in November and December of 1999, several vessels reported that they struck bottom between Mile 865 and 866. The Coast Guard issued Local Notice to Mariners about this hazard beginning in November 1999 (Nos. 48-99, 01-00, 02-00 and 05-00). The last of those was published on February 1, 2000.
On February 15, 2000, the M/V NAVIGATOR and the M/V EASTERN were pushing 30 barges upriver. The M/V NAVIGATOR was approximately 100 feet from the right descending bank at approximately Mile 865.7 when it struck a submerged object causing the M/V NAVIGATOR to take on water and eventually sink. One of the barges was also damaged by a submerged object.
One month later, in March 2000, a submerged hopper barge was discovered by a marine salvage company in the area where the M/C NAVIGATOR struck a submerged object. The Corps confirmed a sunken object at Mile 865.2, most likely a hopper barge, with a multi-beam hydrolic survey in April, 2001[5]. The Corps then decided to remove the sunken barge. A sunken hopper barge, located underneath the ACM, was removed at Mile 865.2.
American Boat filed this civil suit against the United States Army Corps of Engineers and the United States Coast Guard alleging that the failure to mark or remove the sunken barge and for creating an obstruction by overlaying ACM over the sunken barge. The United States argues that any decisions made regarding the marking and removing of the sunken barge are immune from scrutiny under the discretionary function exception to the Suits in Admiralty Act.

II. Legal Standards

A. Summary Judgment
When considering a motion for summary judgment, the Court must determine *948 whether the record, when viewed in the light most favorable to the non-moving party, shows any genuine issue of material fact. Fed.R.Civ.P. 56(c). See generally, Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323, 106 S.Ct. 2548. There is, however, no express or implied requirement in Rule 56 that the moving party must support its motion with affidavits or other materials negating the opponent's claim. Id. The burden is not on the moving party to produce evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the nonmoving party bears the burden of proof. Id. at 325, 106 S.Ct. 2548. Instead, "the burden on the moving party may be discharged by `showing'  that is, pointing out to the district court  that there is an absence of evidence to support the nonmoving party's case." Id. As long as the record before the court demonstrates that there is no genuine issue of material fact, summary judgment should be granted. Id. at 323, 106 S.Ct. 2548.
When faced with a motion for summary judgment meeting the standard set forth above, the non-moving party may not rest upon the mere allegations or denials of its pleadings alone, but must introduce affidavits, depositions, answers to interrogatories, or admissions on file designating specific facts showing that there is a genuine issue of material fact for trial. Celotex, 477 U.S. at 324, 106 S.Ct. 2548; Jetton v. McDonnell Douglas, Corp., 121 F.3d 423, 427 (8th Cir.1997); Noll v. Petrovsky, 828 F.2d 461, 462 (8th Cir.1987). Further, a plaintiff facing a motion for summary judgment must designate specific facts showing a genuine issue of material fact on each essential element of his claim. Id.

B. Sovereign Immunity and Suits in Admiralty Act
The United States is not subject to suit unless it has consented to be sued. Miller v. Tony and Susan Alamo Found., 134 F.3d 910, 915 (8th Cir.1998). American Boat brings its claim against the United States under the Suits in Admiralty Act ("SAA"), 46 U.S.C. § 741 et seq. This Act allows parties to bring all maritime claims against the United States under the admiralty jurisdiction of the federal courts.
The SAA is a derivative of the Federal Tort Claims Act ("FTCA") 28 U.S.C. § 1346(b) which generally authorizes suits against the United States for damages caused by the negligence of an employee of the Government acting within the scope of their employment.

C. Discretionary Function Exception
The FTCA contains an exception to its waiver of sovereign immunity for claims based on the performance of a discretionary function or duty on the part of a federal agency or employee. 28 U.S.C. § 2680(a). The SAA does not contain an express discretionary function exception, but the exception has been extended to the SAA by implication[6]. The exception covers *949 acts that involve an element of choice based upon considerations of public policy. Berkovitz v. U.S., 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). The discretionary function exception is designed to prevent judicial "second guessing" of legislative and administrative decision making. U.S. v. Varig Airlines, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). If a regulation allows employee discretion, a strong presumption exists that the decision requires the balancing of public policy. U.S. v. Gaubert, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991).
Application of the discretionary function exception must focus on the nature of the act, rather than the status of the actor. Varig Airlines, at 813, 104 S.Ct. 2755. The requirement of judgment or choice is not satisfied if a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," because the employee has no choice but to follow the course of action. Berkovitz, at 536, 108 S.Ct. 1954.
The courts have developed a two part test to apply the discretionary function exception. Chantal v. U.S., 104 F.3d 207 (8th Cir., 1997); Berkovitz, at 536, 108 S.Ct. 1954. Initially, the court must examine the conduct for an element of judgment. Id. If there is an element of judgment, the conduct is discretionary. The court must then identify whether the conduct is the sort that the discretionary function is designed to protect. Chantal, at 210. A government employee's conduct is protected only when the decision(s) are based upon public policy considerations. Berkovitz, at 536, 108 S.Ct. 1954. When there is a statute, or regulation which proscribes a specific course of action, the discretionary function does not protect an employee's action. Gaubert, at 324, 111 S.Ct. 1267.
"If a claim falls within the discretionary function exception the court has no subject matter jurisdiction over the case." See Appley Brothers v. U.S., 164 F.3d 1164 (8th Cir.1999) applying the discretionary function exception to the FTCA.

III. Analysis
The Coast Guard weighs the priorities, costs and effectiveness in deciding how best to maintain and mark the navigable channel of the Mississippi River. The exercise of policy judgment based upon the resources available and the relative risks to the public health and safety from alternative actions requires discretion. Whether or not to mark or warn about an object in the river requires the exercise of discretion. Because such decisions require the exercise of discretion the decisions are protected by the discretionary function exception. Likewise, decisions not to mark or warn about an object in the river require the exercise of discretion and are protected by the discretionary function exception.

A. United States Is Not Required to Mark a Submerged Obstruction
American Boat has asserted that the United States was under a duty imposed by the Wreck Act 33 U.S.C. § 409 et seq. to mark any obstruction in the navigable channel of the river. Under 14 U.S.C. § 86, the Coast Guard has discretionary authority to mark obstructions in the navigable channel for the protection of navigation[7]. *950 As the statute sets out, the Coast Guard has the authority to establish such aids, but the duty is permissive, not mandatory. SCNO Barge Lines v. Sun Transportation, 595 F.Supp. 356 (E.D.Mo.1984). The statutory language makes it is clear that the judgment of Coast Guard personnel is required to decide whether or not to mark a submerged hazard. 14 U.S.C. § 86.
When the established policy allows the Coast Guard to exercise discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." Gaubert, at 324, 111 S.Ct. 1267. The Coast Guard must balance its limited resources against its many responsibilities to decide when and where to place buoys in the river. There is substantial support in the Circuit Courts that decisions to establish navigational warnings are exactly the type of judgments made immune from suit by the discretionary function exception to the SAA.
Because the decision to place and remove a buoy is protected the discretionary function exception, I lack subject matter jurisdiction to consider the claim. This claim will be dismissed.

B. United States Is Not Required to Remove a Submerged Obstruction
American Boat also asserts that the United States was under a duty imposed by the Wreck Act 33 U.S.C. § 409 et seq. to remove any obstruction in the navigable channel of the Mississippi River. The Wreck Act places a burden on the private owner of a sunken vessel to mark and remove the sunken vessel. The Secretary of the Army, at his discretion and acting through the Army Corps of Engineers, has the authority to remove any submerged obstruction if it has been in place for more than 30 days. 33 U.S.C. § 414[8]. Nothing in the Wreck Act requires the Corps to remove an obstruction, the Act merely gives the Corps the authority to remove a vessel. The statutory language makes it is clear that the judgment of Corps personnel is required to decide whether or not to remove a submerged obstruction. 14 U.S.C. § 86.
There is substantial support in the Circuit Courts that decisions regarding the removal of potential obstructions are protected by the discretionary function exception to the SAA. See, Tew v. U.S., 86 F.3d 1003 (10th Cir.1996).
Because the Wreck Act does not impose a mandatory duty on the government to remove the wreck, the United States is not liable to a third party for its failure to do so. Tew. Because the established policy allows the Corps to exercise discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." Gaubert, at 324, 111 S.Ct. 1267.
Because the decision to remove a submerged obstacle is protected the discretionary *951 function exception, I lack subject matter jurisdiction to consider the claim. This claim will be dismissed.

C. Revetment Placed over the Sunken Barge Cannot Be An Obstruction to Navigation
American Boat also alleges that the revetment work done in 1995 exacerbated the existing submerged obstruction. American Boat argues that the three-inch squares of ACM installed by the Corps in 1995, contributed to the conditions which ultimately sunk the M/V NAVIGATOR.
The deposition of Ed Belk, Chief of River Stabilization for the Army Corps of Engineers, Memphis District outlined some policy considerations for revetment projects. Priorities for flood control projects pursuant to Flood Control Act of 1928 incorporate data from regular surveys of the river banks and river bottom along with input from landowners, the Coast Guard and navigators who observe problems with the Mississippi River. The Corps then considers the funds available for revetment, the funds required for individual projects, the time available to work on the river, and the time required to make the repairs.
The Corps undertook the maintenance project in the area of Little Cypress Bend in 1995 its efforts to ensure a stable navigable corridor through that region. The decision of how to maintain the riverbank requires judgment and a balance of policy interests contemplated by the discretionary function exception.
Based on the analysis outlined by Belk, the decision to lay additional revetment is clearly one which requires a discretionary analysis by the Corps. For this reason, I find the decision to lay revetment in the area of Little Cypress Bend is not subject to liability because it is covered by the discretionary function exception to the SAA.
In his deposition Belk also testified that if an obstruction is located during the preconstruction phase of a river maintenance project, the Corps would have a number of options available for correcting the problem. See Belk Dep. Pg 56-60. The obstruction could be removed, overlayed with ACM or avoided all together. Whether the Corps was negligent in laying ACM over an existing sunken barge in 1995 depends on whether the Corps failed to find an obstruction that it would have found following the normal course of operations. See, Madison v. United States, 679 F.2d 736, 739 (8th Cir.1982) holding that the United States is immune from suit with respect to the exercise of discretion at the planning level of its decision making process, but may be sued for negligent decisions at the operational level.
The Eighth Circuit Court of Appeals has followed several other circuits in deciding that "federal work designed to facilitate navigation cannot be an obstruction to navigation," under 33 U.S.C. § 403. United States v. Logan & Craig Charter 676 F.2d 1216 (8th Cir.1982).
Because the decision to install additional revetment at Little Cypress Bend is designed to facilitate navigation, the revetment cannot be an obstruction to navigation. The decision to install additional revetment is protected by the discretionary function exception. Because I lack subject matter jurisdiction to consider the claim, this claim will be dismissed.

D. The Memorandum Of Agreement Does Not Impose a Nondiscretionary Duty
American Boat argues that a Memorandum of Agreement ("MOA") between the Army Corps of Engineers and the U.S. Coast Guard established a nondiscretionary duty on the Coast Guard to report possible hazards to the Corps. *952 This internal regulation provides guidelines as to which agency does what in assessing an obstruction. It establishes a range of possible actions to take and a nonexclusive list of factors to consider in deciding what to do about an obstruction.
When the Corps or Coast Guard receives a report of a sunken vessel or other obstruction, the required actions include: (1) assess the obstruction's impact upon navigation; (2) decide if the obstruction is a hazard to navigation; (3) disseminate navigational safety information pertaining to obstructions.
The Fifth Circuit Court of Appeals considered the MOA in Theriot v. United States, 245 F.3d 388 (5th Cir.1998). After the Corps and the Coast Guard decide that an object is a hazard to navigation, the MOA lists alternative courses of action that they may follow, which include doing nothing. Theriot, 245 F.3d 388. The Fifth Circuit reasoned that even if the MOA did mandate specific corrective action, the decision whether an obstruction is a hazard to navigation involves the use of the agencies' collective judgment. Id. Under either scenario, the action of the Corps and Coast Guard under the MOA was covered by the discretionary function exception. Id.
American Boat claims that the failure of the Coast Guard to notify the Corps allowed the sunken barge to remain an obstruction in the Mississippi River until 2001. Even if the Coast Guard had reported the sunken barge to the Corps, the MOA did not impose a nondiscretionary duty on either the Corps or the Coast Guard to mark or remove the sunken barge.

IV. Conclusion
The facts in this case are not in dispute. The question is whether the conduct of the Government relating to the maintenance of the navigable channel of the Mississippi River in the area of Little Cypress Bend is immune from suit under the discretionary function exception to the SAA. I finds that the decisions of the Coast Guard and Army Corps of Engineers in this case fall within the discretionary function exception and the claims against the United States are thereby barred for lack of subject matter jurisdiction. I will grant the United States Motion for Summary Judgment.
Accordingly,
IT IS HEREBY ORDERED that Defendant USA's Motion for Summary Judgment [# 47] is GRANTED.

FINAL JUDGMENT
In accordance with the Memorandum and Order filed this day and incorporated herein,
IT IS HEREBY ORDERED ADJUDGED and DECREED that defendants' Motion for Summary Judgment is granted and Plaintiffs' Complaint is DISMISSED with prejudice for lack of subject matter jurisdiction.
NOTES
[1] M/V represents Motor Vehicle, also called a tug boat.
[2] Revetment is a covering of material, used to sustain an embankment when it receives a slope steeper than the natural slope. Webster's Revised Unabridged Dictionary, © 1998 MICRA, Inc.
[3] An annual survey records data at intervals of two hundred feet. A second, pre-construction survey records data at intervals of one hundred feet.
[4] ACM is three-inch squares of concrete connected by stainless steal cable used as revetment.
[5] The multi-beam survey was not available to the Corps in 1995.
[6] With the exception of the Fourth Circuit, every other circuit to consider the question has concluded that the discretionary function exception should be read into the SAA. See Mid-South Holding Co. v. United States, 225 F.3d 1201, 1204 (11th Cir.2000); Good v. Ohio Edison Co., 149 F.3d 413, 418-19 (6th Cir.1998); Tew v. United States, 86 F.3d 1003, 1005 (10th Cir.1996); Baldassaro v. United States, 64 F.3d 206, 208 (5th Cir.1995); Cassens v. St. Louis River Cruise Lines, Inc., 44 F.3d 508, 511 (7th Cir.1995); Earles v. United States, 935 F.2d 1028, 1032 (9th Cir.1991); Sea-Land Serv., Inc. v. United States, 919 F.2d 888, 891-93 (3d Cir.1990); Robinson v. United States (In re Joint E. & S. Dists. Asbestos Litig.), 891 F.2d 31, 34-35 (2d Cir.1989); Gercey v. United States, 540 F.2d 536, 539 (1st Cir.1976).
[7] "The Secretary may mark for the protection of navigation any sunken vessel or other obstruction existing on the navigable waters or waters above the continental shelf of the United States in such manner and for so long as, in his judgment, the needs of maritime navigation require..." 14 U.S.C. § 86 (emphasis added).
[8] "Whenever the navigation of any river, lake, harbor, sound, bay, canal, or other navigable waters of the United States shall be obstructed or endangered by any sunken vessel, boat, water craft, raft, or other similar obstruction, and such obstruction has existed for a longer period than thirty days, or whenever the abandonment of such obstruction can be legally established in a less space of time, the sunken vessel, boat, water craft, raft, or other obstruction shall be subject to be broken up, removed, sold, or otherwise disposed of by the Secretary of the Army at his discretion, without liability for any damage to the owners of the same..." 33 U.S.C. § 414, underline added.