**EKLOF MARINE CORP. and Eklof Transportation Co., Inc., Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 976, Docket 85–6016.

United States Court of Appeals, Second Circuit.

Argued April 3, 1985.
Decided May 14, 1985.

Herbert B. Halberg, New York City (Beck, Halberg & Williamson, New York City, on the brief), for plaintiffs-appellants.

Thomas F. Murphy, Jr., U.S. Dept. of Justice, New York City (Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., Raymond J. Dearie, U.S. Atty., Brooklyn, N.Y., and Janis G. Schulmeisters, U.S. Dept. of Justice, New York City, on the brief), for defendant-appellee.

Before KAUFMAN, TIMBERS and NEWMAN, Circuit Judges.

TIMBERS, Circuit Judge:

Eklof Marine Corp. and Eklof Transportation Co., Inc. appeal from a judgment entered December 28, 1984 in the Eastern District of New York, Mark A. Costantino, *District Judge,* granting the motion by appellee United States of America to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief could be granted. Appellants commenced this action under the Suits in Admiralty Act, 46 U.S.C. §§ 741-752 (1982), and the Public Vessels Act, 46 U.S.C. §§ 781-790 (1982), to recover $382,000 damages sustained by appellants' vessel, the M/V RELIABLE, as the result of the alleged negligence of the Coast Guard which, by improperly marking a reef, had caused the grounding of the tanker at Diamond Reef in the Hudson River on June 14, 1983. The district court held that the placement of a buoy by the Coast Guard as an aid to navigation is a discretionary act and that the complaint failed to state a claim upon which relief could be granted.

For the reasons stated below, we reverse and remand.

## I.

We summarize only those facts believed necessary to an understanding of our rulings on the legal issues raised on appeal.

Eklof Marine Corp. was the operator, and Eklof Transportation Co., Inc. the owner, of the tanker M/V RELIABLE. On June 14, 1983, the RELIABLE was proceeding north on the Hudson River toward Albany, which was its destination. The tanker ran aground on the hard river bottom at the southwest portion of an area known as Diamond Reef, which is situated at the mouth of Wappinger Creek in the vicinity of New Hamberg, New York.

The reef was marked at its south end by a single red and black buoy which had been positioned by the United States Coast Guard some years before the grounding. The Coast Guard continued to maintain the buoy. It is the only aid to navigation in the vicinity of Diamond Reef. There is no claim that the buoy was off-station. The complaint alleged, rather, that numerous other groundings had occurred in the same area in recent years and that the groundings, including that of the RELIABLE, were caused by the improper positioning of

the buoy. It was further alleged that the single buoy was "wholly inadequate" to mark the southern extremity of the reef and completely "failed to mark" its western extremity.

## II.

Before turning to the legal issues raised on appeal, we note that, although appellee moved under Rule 12(b)(6) to dismiss the complaint, the district court accepted affidavits and documentary evidence from both sides. Furthermore, in its opinion the court specifically referred to facts regarding the depiction of the reef on navigational charts. Such facts are not alleged in the complaint. Rule 12(b)(6) requires that, when "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56", even if the sole issue to be resolved on the motion is the legal sufficiency of the claim. *See Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.,* 690 F.2d 1240, 1250 & n. 14 (9 Cir. 1982), *cert. denied,* 459 U.S. 1227 (1983). The Advisory Committee Notes to the 1946 Amendment to Rule 12(b)(6) also state that, in such a situation, "when the case reaches the court of appeals, that court should treat the motion in the same way." *See Boro Hall Corp. v. General Motors Corp.,* 124 F.2d 822, 823 (2 Cir.1942), *cert. denied,* 317 U.S. 695 (1943). In light of the provisions of Rule 12(b)(6) and because *both* parties were afforded the opportunity to present extraneous matter, we treat appellee's motion as one for summary judgment and the judgment from which the instant appeal was taken as a summary judgment dismissing the complaint.

## III.

The district court stated that "[e]ssentially, plaintiffs claim that the buoy either should have been placed in a different location or that additional markers were necessary." The court held, however, that the Coast Guard, as a matter of law, cannot be liable for failing to act in placing additional aids to navigation in the vicinity of Diamond Reef and that, absent an abuse of discretion, the decision to place the Diamond Reef buoy at its present location is unreviewable. We disagree.

■ Pursuant to 14 U.S.C. § 81 (1982), the Coast Guard *"may* establish, maintain, and operate" aids to maritime navigation "to prevent disasters, collisions, and wrecks of vessels and aircraft". (emphasis added). It has long been established that the Coast Guard has no statutory mandate to *ensure* the safety of all navigable waterways in the United States and thus it has no duty to mark all obstructions. *E.g., Indian Towing Co. v. United States,* 350 U.S. 61, 69 (1955) (dicta); *Transorient Navigators Co. v. M/S Southwind,* 714 F.2d 1358, 1367 (5 Cir.1983) (same). As the district court in the instant case correctly observed, "there is no liability for failing to act." *Eklof Marine Corp. v. United States,* CV-84-2495 (E.D.N.Y.1984). Thus, for example, the Coast Guard could not be held to be negligent, as a matter of law, for failing to mark the end of a submerged breakwater. *Bearce v. United States,* 614 F.2d 556, 560-61 (7 Cir.), *cert. denied,* 449 U.S. 837 (1980). In *Bearce,* the court distinguished cases involving the negligent positioning or maintenance of maritime aids and held that "the decision to establish the aid in the first instance was discretionary", *id.* at 560, and hence unreviewable.

■ We agree that, if the Coast Guard had left Diamond Reef completely unmarked, there would be no basis for liability in this case. In such a situation, mariners would be expected to rely upon navigation charts. Assuming the charts are accurate, any grounding would be entirely the fault of the navigator. But where, as here, the Coast Guard has acted to mark an obstruction or maritime danger, a duty arises to do so in a way that does not create a new hazard. We held just last term that "Reliance is an essential element in a case for damages against the Coast Guard." *Whitney S.S. Co. v. United States,* 747 F.2d 69, 72 (2 Cir.1984). It is reliance that gives rise to the Coast

Guard's duty. *Indian Towing, supra,* 350 U.S. at 69; *Magno v. Corros,* 630 F.2d 224, 228–29 (4 Cir.1980), *cert. denied,* 451 U.S. 970 (1981).

The Supreme Court held in *Indian Towing* that, once the Coast Guard exercised its discretion to operate a lighthouse in a particular location, "and engendered reliance on the guidance afforded by the light, it was obligated to use due care to make certain that the light was kept in good working order" and, if the light failed, to discover this fact and repair it or give warning. 350 U.S. at 69. Similarly, in *Whitney S.S.,* we held that the Coast Guard could be held liable for failing properly to maintain a traffic buoy in Buffalo Harbor which had slipped its moorings and drifted off-station. 747 F.2d at 74. We reached this conclusion over the argument of the United States that sole reliance on the buoy was unjustified because mariners had been warned to use other navigational aids, including charts, in addition to buoys. *Id.* at 73. In rejecting that argument, we held that the failure of the mariner to use other methods of navigation served only to reduce the Coast Guard's proportion of fault in assessing damages. *Id.*

■ While the instant case does not present the situation of a malfunctioning lighthouse or an off-station buoy, the duty of the Coast Guard here is essentially the same: once the Coast Guard acts, and causes others justifiably to rely on such action, a duty arises to act reasonably and with due care to prevent a navigational aid from becoming "a trap for the ignorant or unwary rather than a warning of danger." *Somerset Seafood Co. v. United States,* 193 F.2d 631, 635 (4 Cir.1951). This is particularly true where, as demonstrated by an internal Coast Guard report which was submitted by appellants to the district court in the instant case, the Coast Guard was aware of the practice of "buoy hopping", where mariners "are accustomed to having good water close aboard when passing buoys on the 'right' side", or, as a nautical maven would put it, when leaving buoys to port. The Coast Guard was under a duty to place the buoy in such a position that mariners who follow normal practice would not be enticed to enter upon a danger that otherwise might have been avoided.

■ Appellee seeks solace in the holding in *Bearce, supra,* and the dicta in *Indian Towing, supra,* by characterizing appellants' claim as one requiring the placement of more than one buoy adequately to mark Diamond Reef. Appellee views the complaint as alleging that the Coast Guard, in effect, "failed to act" by not placing more buoys in that location and therefore no claim is stated. We have concluded that the complaint can be read as stating a claim for mispositioning the buoy. We also are persuaded that the Coast Guard, having undertaken to mark a hazard, is equally duty-bound to provide sufficient aids to mark the obstruction adequately and that the failure to do so also may result in liability. It is the marine obstruction that creates the initial danger. That danger defines the *scope* of the Coast Guard's duty once the Coast Guard acts to mark it. For the purpose of determining whether that duty has been breached, the questions of whether the buoy was mispositioned or whether more buoys were necessary adequately to mark the obstruction are questions of fact for the trial court to decide. The situation here presented is not one of determining, as a matter of law, whether there *arose* a duty to act with due care. Once that duty arises, as we conclude it did, the failure to act reasonably will render the government liable for either "omission or commission." *Ingham v. Eastern Air Lines, Inc.,* 373 F.2d 227, 238 (2 Cir.), *cert. denied,* 289 U.S. 931 (1967). When the Coast Guard acted to mark the obstruction, it was required to do whatever was reasonably necessary, including deploying additional buoys, to mark it adequately.

Our holding on the instant appeal is consistent with the Fourth Circuit's view in *Somerset Seafood, supra,* where the Coast Guard was held negligent for positioning a single buoy more than 500 feet from a sunken wreck. 193 F.2d at 637. *See also*

*Lane v. United States*, 529 F.2d 175, 179 (4 Cir.1975). We recognize, however, that the First Circuit has reached a different result in a similar case. In *Chute v. United States*, 610 F.2d 7 (1 Cir.1979), *cert. denied*, 446 U.S. 936 (1980), the court concluded that the Coast Guard's decision to mark a sunken wreck with a single three and one-half foot buoy placed 300 feet away from the obstruction was unreviewable. *Id.* at 12. The court held that "[c]ourts have neither the expertise, the information, nor the authority to allocate the finite resources available to the Secretary [of Transportation] among competing priorities." *Id.* We decline to follow *Chute* for the following reasons.

First, *Chute* (as well as *Somerset*) involved a sunken vessel. The marking of such an obstruction is governed by 14 U.S.C. § 86 (1982), rather than § 81 which is the statute involved in the present case. In the 1965 Amendment to § 86, Congress provided that the Secretary may mark such obstructions "in such manner and for so long as, *in his judgment,* the needs of maritime navigation require." (emphasis added). It was partially in reliance on this new language, which is not present in § 81, that the First Circuit decided *Chute* as it did.

Second, we disagree with the First Circuit's appraisal of the ability of the factfinder to determine whether the Coast Guard has breached its duty of due care. We commit for decision to courts and juries many issues of equal or greater complexity and importance than the question of whether a marine obstruction was properly marked. We also disagree with the First Circuit's conclusion that, to hold otherwise, would require "that the most effective and best means [to mark an obstruction] must always be selected." *Chute, supra,* 610 F.2d at 13. The law of negligence teaches, rather, that one who acts must do so *reasonably* in light of what is foreseeable and that *reasonableness* is the threshold to liability. "Courts have rejected any idea that strict liability applies with respect to the placing of navigational aids." *Whitney S.S., supra,* 747 F.2d at 75. Every case

must be judged on its particular facts, and liability must be determined, once a duty has been found to exist, by reference to the surrounding circumstances and the knowledge, or lack thereof, on the part of the alleged tortfeasor. In short, while reliance defines the duty, reasonableness defines its breach.

Finally, we do not share the *Chute* court's concern that allowing such actions to proceed to judgment will result in improper judicial interference with the allocation of finite resources. In the same way that the Coast Guard must maintain navigational aids in proper working order, *see Indian Towing, supra,* with whatever cost that entails, it also must ensure that its placement of those aids does not create a new danger and must assume the attendant expense. This is simply a consequence of the waiver of sovereign immunity represented by the Suits in Admiralty Act and the Public Vessels Act. *Keene Corp. v. United States,* 700 F.2d 836, 843 (2 Cir. 1983), *cert. denied,* 104 S.Ct. 195 (1984).

Whether the Coast Guard acted reasonably under the circumstances of this case has yet to be determined. The parties and the district court until now have limited the controversy to the presence or absence of a duty. Some of the supplementary material submitted by the parties in the district court may be relevant to the issues of reasonableness and causation, e.g., the 1979 Coast Guard report referred to above in which a Coast Guard officer noted "three recent vessel casualties in the vicinity of Diamond Reef" and recommended a reevaluation of the marking "with a view toward improving the message which is sent to the mariner if possible". In short, there remain material questions of fact to be resolved. We rule only that there was a duty on the part of the Coast Guard to use reasonable care in marking Diamond Reef.

## IV.

In view of our holding that the precise manner of marking an obstruction is not a discretionary act, we find it unnecessary to

address appellee's argument that the "discretionary function exception" found in the Federal Tort Claims Act, 28 U.S.C. § 2680(a) (1982), also is implied in the Suits in Admiralty Act, 46 U.S.C. §§ 741–752 (1982). *Compare, e.g., Bearce, supra,* 614 F.2d at 559–60 (exception implied); *Williams v. United States,* 581 F.Supp. 847, 852 (S.D.Ga.1983) (same), *aff'd,* 747 F.2d 700 (11 Cir.1984) *with Lane, supra,* 529 F.2d at 179 (exception not implied); *De Bardelben Marine Corp. v. United States,* 451 F.2d 140, 145 (5 Cir.1971) (same).

Appellee's attempt to characterize the positioning of a buoy as a "planning" function, as opposed to an "operational" function, falls short of the mark. *See Indian Towing, supra,* 350 U.S. at 64. As the Supreme Court recently noted, the discretionary function exception is an expression of the desire of Congress "to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* —— U.S. ——, ——, 104 S.Ct. 2755, 2765 (1984); *see also Dalehite v. United States,* 346 U.S. 15, 35–36 (1953). For example, in *Varig Airlines, supra,* the Court held that the Federal Aviation Administration's certification of a type of aircraft as airworthy is an exercise of its regulatory authority and hence exempt from liability as a discretionary function. —— U.S. at ——, 104 S.Ct. at 2766.

The decision, however, to place a navigational aid at a particular location or to employ only one such aid at that location, as opposed to the initial decision to mark the obstruction, is not an expression of any "policy" of which we are aware and does not constitute an executive branch decision at a level that would implicate the separation of powers concerns that appellee raises. *Cf. Seaboard Coast Line R.R. v. United States,* 473 F.2d 714, 716 (5 Cir.1973)

(negligent design of drainage ditch not within discretionary function exception). There is no relevant distinction between the failure to maintain a navigational aid at its proper location, *see Whitney S.S., supra,* and the failure to place it properly in the first instance. For the unwary mariner, certainly, the result is the same in either situation and, for the Coast Guard, so is the potential liability.[1]

To summarize: We hold that the Coast Guard was under a duty to use reasonable care in marking Diamond Reef and that summary judgment for appellee was erroneously granted. We remand to the district court for a determination of whether there was a breach of that duty; whether the breach, if found, was a proximate cause of the grounding; and, if the issue is reached, the amount of damages which appellants are entitled to recover.

Reversed and remanded.

1. Once again, we decline to be a party to adding to the Coast Guard's honored motto, "Semper Paratus" (Always Ready), the words "Interdum Prudens" (Sometimes Careful). *United States v.*

*Sandra & Dennis Fishing Corp.,* 372 F.2d 189, 197 (1 Cir.) (Aldrich, J.), *cert. denied,* 389 U.S. 836 (1967). *See also Whitney S.S., supra,* 747 F.2d at 70.