[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 15896
Presently before the court is the defendant's motion to dissolve the September 24, 2001 temporary injunction which, among other things, enjoins the defendants from terminating the plaintiff, Debra S. Eyges. The plaintiff, is a lawyer, director and one-third shareholder of the defendant law firm of Krevolin, Feinstein, Gorman, Eyges and Herrman, P.C. The defendants, David H. Herrmann and Robert Gorman, are also lawyers, directors and one-third shareholders of the law firm of Krevolin, Feinstein, Gorman, Eyges and Herrman, P.C.
The plaintiff and defendants have been practicing law together for over twelve years and have been partners since 1989. In May of 1989, a contract was entered into by the plaintiff, defendants and the founders of the firm, Milton Krevolin and Arthur Feinstein. The May 1989 contract outlined the duties of the employer and employees, the terms of the employment and the gradual transfer of ownership from the founders of the firm to the defendants and the plaintiff. The contract also provides for termination of an employee for cause, which includes, but was not limited to, the withdrawal of the employee's license to practice law, the withholding of any receipts for professional services, habitual drunkenness, drug abuse, fraud, misappropriation and prolonged inefficiency or incompetency. The termination process requires written notice to the candidate for termination and a majority vote of the board of directors. Further, the employee has a right to appeal the decision, and the employee is not technically terminated until after the appeal process, including any appeal made to the courts. The employee's compensation can be suspended until determination of the appeal. The employer decides whether the employee could render any services during the termination process.
From July 1, 1989 until July 1, 1995, the firm was owned and operated by the five attorneys who were party to the 1989 contract, namely, the defendants, the plaintiff and the two founders of the firm. After July 1, 1995, the original founders no longer had any ownership interests and the firm was owned and operated by the three remaining attorneys. The firm was composed, owned and operated by the plaintiff and the defendants, each owning a one-third interest in the firm. The firm continued in this manner until August, 2001, when the defendants orally informed the plaintiff that she was being terminated. The plaintiff retained counsel, and through counsel, instructed the defendants that any action regarding her employment relationship with the firm must be conducted in accordance with the employment agreement of May 5, 1989.
The defendants then, pursuant to the 1989 employment contract, gave the CT Page 15897 plaintiff notice of a September 24, 2001 meeting of the shareholders (the defendants) to discuss the recommendation of the board of directors(also the defendants) that the plaintiff be terminated. On September 24, 2001, prior to the meeting, the plaintiff obtained a temporary injunction preventing the defendants from taking certain steps in terminating the plaintiff.[1] The injunction was successful in preventing the September 24, 2001 meeting. On September 28, 2001, the defendants filed a motion to quash a September 26, 2001 subpoena, a protective order barring the depositions of the defendants and a motion to dissolve the temporary injunction. On September 28, 2001, the motion to quash and protective order were addressed and the parties were stayed from any discovery, except limited interrogatories. Presently before this court is the defendant's September 28, 2001 motion to dissolve the injunction. The sole issue to be decided is whether enjoining the defendants from terminating the plaintiff is an appropriate remedy.
"Although the defendant filed the pending motion to dissolve the temporary injunction, it is the plaintiffs continuing burden to prove their entitlement to ongoing injunctive relief." Morrill v. KennedyFunding Capital Corp., Superior Court, judicial district of Waterbury, Docket No. 120741 (December 30, 1994, West, J.), citing Buckner v.Shorehaven Golf Club, Inc., 13 Conn. App. 503, 504, 537 A.2d 532 0 (1988). "There is a four-part test for the issuance of a temporary injunction: (1) the plaintiff ha[s] no adequate legal remedy; (2) the plaintiff would suffer irreparable injury absent [the injunction]; (3) the plaintiff [is] likely to prevail . . .; and (4) the balance of the equities favor[s the issuance of the injunction]." (Citations omitted.)Boutilier v. The Saybrook Manor, Superior Court, judicial district of Middlesex at Middletown, Docket No. 94366 (July 26, 2001, Arena J.), citing Waterbury Teachers Assn. v. Freedom of Information Commission,230 Conn. 441, 446, 645 A.2d 978 (1994).
The plaintiff argues that her case is distinguishable from general employment contracts that are not subject to injunctive relief because her ownership interest in the corporate defendant takes her out of the personal services realm. Second, the plaintiff argues that courts may order specific performance on personal service contracts when, as here, there will be irreparable harm. The defendants argue that personal service contracts are not specifically enforceable and specific performance is not an appropriate remedy for the plaintiff. It is their position that Connecticut law simply does not permit personal service contracts to be enjoined.
"Over 100 years ago, our Supreme Court stated, in a different fact situation, that [c]ontracts for personal service are matters for Courts at law, and equity will not undertake a specific performance." Lark v.CT Page 15898Post-Newsweek Stations Connecticut, Inc., Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 705326 (November 28, 1994, Berger, J.) (13 Conn. L. Rptr. 41, 44), quotingWilliam Rogers Mfg. Co. v. Rogers, 58 Conn. 356, 363-64 (1890). In some instances, however, "[s]everal courts have recognized exceptions to the blanket prohibition against specific enforcement of personal service contracts." Meyers v. Trinity College, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 553687 (November 9, 1995, Aurigemma, J.), citing Espinosa v. Connecticut College, Superior Court, judicial district of New London, Docket No. 522872 (June 9, 1993,Hurley, J.) (equitable remedy is available in an employment contract issue where irreparable harm, caused by denial of tenure, would result). In Espinosa, the court recognized that there are exceptions to the general rule against injunctive relief for personal service contracts, however, the court could not find "evidence presented by the plaintiff as to what harm she herself would suffer as a result of a non-renewal of her year to year contract." Espinosa v. Connecticut College, supra, Superior Court, Docket No. 522872.
This court addresses an employment contract that is more than a simple personal service contract. To determine whether the injunction is the appropriate remedy this court will apply the four prong analysis outlined above and long associated with determining the appropriateness of injunctive relief.
The first prong questions whether there is a tangible, calculable remedy at law. If there is, then the plaintiff is not entitled to any equitable relief. "[A]n adequate remedy at law is one which is specific and adapted to securing the relief sought conveniently, effectively and completely. . . ." Commissioner on Human Rights v. Human Rights Referee,66 Conn. App. 196, 200, ___ A.2d ___ (2001). In the present case, the plaintiff is a lawyer, officer and one-third shareholder of the defendant law firm. The law firm is a closely held corporation with shares that are split amongst the three lawyers. The shares of this closely held corporation will be much less valuable to the plaintiff if she is not employed by the firm, which is why courts have treated closely held corporate stock differently. "Generally contracts for the transfer of stock are not specifically enforceable because damages will suffice. When the stock, however, is that of a closely held corporation, which is difficult to value in money, specific performance may be the only just remedy." (Citations omitted.) Burns v. Gould, supra, 172 Conn. 214. The stock is not publicly traded and the employment contract offers no buy out price for the stock. The stock in the present case is closely held stock, therefore, it is difficult to value in money and adequate relief cannot be granted to the plaintiff in a convenient, effective or complete manner. CT Page 15899
The plaintiff has an interest in the goodwill of the firm that she has been integral in developing.[2] The plaintiff has been a lawyer for sixteen years, fourteen of the years have been spent working as a lawyer, director and shareholder for the defendant law firm, developing its good name and reputation.
Damage to her reputation cannot be compensated by money damages. It cannot be calculated and reimbursed to the plaintiff. "Being removed from a position without cause might injure plaintiff by some minor damage to his reputation. There is no legal remedy available to plaintiff for such injury to his reputation." Griffin v. Kupchunos, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 561314 (October 3, 1996, O'Neill, J.) (court acknowledged that removal of Chief Deputy Sheriff was injury to reputation that could not be remedied by law, however, court granted motion to dissolve as it could not find that plaintiff would prevail in action). In the present case, the plaintiffs reputation will suffer in many ways. First, the plaintiff represents many clients on real estate matters for whom she has filed appearances and who are relying on her services. The plaintiff alleges that she is the only attorney capable of handling these real estate clients and that they make up a substantial portion of her practice. She will have to leave these clients without providing them the legal services that they are expecting and on which they are relying. Damage to her reputation is certain if she is terminated and forced to abandon these clients. Second, damage to her reputation as an attorney is certain if she is terminated for prolonged inefficiency and incompetency. While these may be reasons for termination, the defendants did not give these as reasons when the defendants orally told her she was being terminated. The earliest that the plaintiff was informed that her performance was anything less than satisfactory was after the defendants attempted to orally terminate her in August of 2001. The accusations of incompetency and inefficiency coupled with the abandonment of clients who are relying on her will certainly damage her reputation. This type of damage to the plaintiffs reputation cannot be remedied through the courts of law. Griffin v.Kupchunos, supra, Superior Court, Docket No. 561314.
The damage caused to her reputation might not qualifyas irreparable harm on its own, however, taken as a whole, the damages that will result from termination certainly qualify as irreparable harm. The defendants argue and rely on the premise that "[i]rreparable harm does not come from being degraded, humiliated and having your reputation injured." Jarettv. St. Joseph College, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 586168 (June 24, 1999 O'Neill, J.), citing Stewart v. United States INS., 762 F.2d 193, 200 (1985). They argue therefore that the plaintiff has not suffered irreparable harm and CT Page 15900 injunctive relief is not appropriate. The Jarett Court, which the defendant cites in its supporting memorandum, addressed a professor at St. Joseph College who had lost his position as chair of a department but kept his position as a full time professor. Under these facts, the court found that damage to reputation is not sufficient to satisfy irreparable harm. Jarett v. St. Joseph College, Superior Court, Docket No. 586168. The plaintiff in the present case has much more at stake than the loss of a chairperson position. The plaintiff in Jarett was not a one-third shareholder or director of St. Joseph College. The plaintiff in Jarett
was not being removed as a director of a closely held corporation, a position that represented almost his entire professional career.
Further Jarett cites Stewart v. United States INS, supra, 762 F.2d 200, for the rule that degradation, humiliation and having your reputation injured is insufficient to prove irreparable harm. Stewart addressed a government employee who was suspended indefinitely without pay and who sought injunctive relief. That plaintiff also differs from the plaintiff in the present case. In Stewart, the plaintiff was arrested and faced criminal charges for using the gun he was authorized to carry as an immigration officer in an off-duty scuffle. Stewart v. United StatesINS., supra, 762 F.2d 200. Again, this is a very different fact situation than the present case. The plaintiff in Stewart was not a one-third shareholder or director of the INS, and did not stand to lose his business to which he had devoted his professional life. The defendants' reliance on these cases to mitigate the plaintiffs damage to reputation is misplaced.
"The irreparability of an injury depends more upon the nature of the right injuriously affected than the pecuniary measure of the loss. NewLondon v. Perkins, 87 Conn. 229, 235, 87 A. 724 (1913); Robertson v.Lewie, 77 Conn. 345, 346, 59 A. 409 (1904)." Local 818 of Council 4AFSCME, AFL-CIO v. East Haven, 42 Conn. Sup. 227, 238, 614 A.2d 1260
(January 3, 1992). The irreparability of the harm in the present case does not stem from the plaintiffs loss of a personal service contract, it stems from the loss of a business that she developed and ran with the Jefendants. In August, 2001 the defendants attempted to orally terminate the plaintiff as if she had nothing more than a pecuniary interest in her job. This method of termination, oral termination, was a violation of her employment contract, which is when the plaintiff retained counsel and sought relief from the court.
The plaintiff is likely to prevail in the ultimate outcome of the case for the reasons listed above. The defendants argue that they should now be permitted to terminate the plaintiff according to the employment contract. This argument fails for the reason that the defendants originally tried to fire the plaintiff orally, without explanation or CT Page 15901 cause, in August, 2001. The termination process outlined in the employment contract requires a written notification of a shareholders' meeting. The defendants failed to follow this procedure but now request that the court be bound by it. Further, the only cause the defendants have offered in support of their termination of the plaintiff is prolonged incompetency and inefficiency. The defendants, however, had not approached the plaintiff with any such concerns at the time of the oral termination in August 2001.
"The issuance of an injunction is the exercise of an extraordinary power which rests within the sound discretion of the court, and the justiciable interest which entitles one to seek redress in an action for injunctive relief is at least one founded on the imminence of substantial and irreparable harm." Silitschanu v. Groesbeck, 12 Conn. App. 57, 64,529 A.2d 732 (1987) affd, 208 Conn. 312, 318, 543 A.2d 737 (1988). "The granting of an injunction is not mandatory but is within the sound discretion of the trial court." Everett v. Pabilonia, 11 Conn. App. 171,178, 526 A.2d 543 (1987). This is a case which is distinguishable from a simple personal service contract that can be quantified in dollars. It is a situation where a employee/owner risks losing far more than a personal service contract. This plaintiff risks the loss of her business, stock in a closely held corporation and, perhaps most importantly, her reputation as a lawyer. These losses are tantamount to irreparable harm that cannot be relieved through a court of law. When balancing the equities at hand, this court finds that the plaintiff has met her burden of proving her ongoing entitlement to injunctive relief. The defendants' motion to dissolve is therefore denied.