**MARBULK SHIPPING, INC., Plaintiff,**

v.

**MARTIN–MARIETTA MATERIALS, INC., et al., Defendants.**

**No. CIV.A.02–0190–WS–L.**

United States District Court,
S.D. Alabama,
Southern Division.

June 17, 2003.

Grover E. Asmus, II, Armbrecht Jackson L.L.P.P., Mobile, AL, Daniel Hoerner, Andre J. Mouledoux, Mouledoux, Bland, LeGrand & Brackett, New Orleans, LA, for Bean Dredging LLC.

Patricia Nicole Beyer, U.S. Attorney's Office, Mobile, AL, Matthew J. Glomb, U.S. Dept. of Justice, Torts Branch, Civil Div., Washington, DC, for National Ocean Survey and National Oceanic and Atmospheric Admin., U.S Coast Guard, U.S. Army Corps of Engineers.

Gregory C. Buffalow, Edward Brough Holzwanger, Miller, Hamilton, Snider & Odom, Mobile, AL, for Marbulk Shipping, Inc.

John F. Fay, William K. Terrill, II, Deutsch, Kerrigan & Stiles, New Orleans, LA, Ray M. Thompson, Mobile, AL, for Martin–Marietta Aggregates, Inc., Martin–Marietta Materials, Inc.

Samuel B. Gabb, Lundy & Davis, L.L.P., Lake Charles, LA, for Mike Hook, Inc.

Allen E. Graham, Lyons, Pipes & Cook, Mobile, AL, for Alabama State Docks.

Alex F. Lankford, III, G. Hamp Uzzelle, III, Hand Arendall, L.L.C., Mobile, AL, for Seabulk Intern., Inc.

## ORDER ON MOTION TO DISMISS

STEELE, District Judge.

This matter is before the Court on the motion of the United States to dismiss certain claims asserted against the United

States Coast Guard. (Doc. 99).[1] The United States and the plaintiff have filed briefs and evidentiary materials in support of their respective positions, (Docs.100, 117, 118, 124, 162, 163, 164), and the motion is now ripe for resolution. After carefully considering the foregoing materials, as well as all other relevant materials in the file, the Court concludes that the United States' motion to dismiss is due to be granted.

## BACKGROUND

The plaintiff is the owner and/or operator of the M/V BAHAMA SPIRIT ("the Vessel"). Shortly after midnight on March 27, 2001, the Vessel entered a turning basin ("the Basin") reached by the Theodore Ship Channel ("the Channel"), heading generally west. The Vessel carried a load of limestone for discharge at a facility along the northern bank of the Channel. The Basin lay immediately south of the facility. To position its port side alongside the facility, the Vessel was required to execute a 180–degree, clockwise turn in the Basin. Early in the maneuver, as the Vessel was pivoting around its bow, the stern apparently struck a submerged object on the east side of the Basin, damaging the rudder.

The second amended complaint alleges that the Coast Guard "failed to take proper action to survey, locate, identify, mark, and /or remove said dredge pipe and underwater hazard within the berth and turning basin, as well as failed to publish and disseminate notices to mariners containing appropriate warnings." (Doc. 137,

¶ 22F). The United States does not seek dismissal with respect to all these duties but only those "pertaining to [the Coast Guard's] discretionary decision not to establish a Federal aid to navigation in the Theodore Turning Basin." (Doc. 99 at 1).

## DISCUSSION

▮▮▮ The Suits in Admiralty Act ("SAA") provides "the sole jurisdictional basis for admiralty claims against the United States" that do not involve a public vessel. *Mid–South Holding Co. v. United States*, 225 F.3d 1201, 1203 (11th Cir.2000). The SAA includes an express waiver of the federal government's sovereign immunity, 46 U.S.C.app. § 742, but the waiver is subject to various exceptions. Central to the pending motion is the "discretionary function" exception. "[T]he Eleventh Circuit has held that the discretionary function exception of the Federal Tort Claims Act, 28 U.S.C. § 2680(a), applies to suits under the SAA." *Drake Towing Co. v. Meisner Marine Construction Co.*, 765 F.2d 1060, 1063–64 (11th Cir.1985). Thus, case law developing the discretionary function exception in the context of the Federal Tort Claims Act ("FTCA") is applicable in construing the corresponding exception under the SAA. *United States Fire Insurance Co. v. United States*, 806 F.2d 1529, 1535 (11th Cir.1986).

▮▮▮ If the discretionary function exception applies, the Court lacks subject matter jurisdiction, and dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) is required. *Mid–South Holding Co. v. United States*, 225 F.3d at 1202; *Cohen v.*

---

1. The original and amended complaints name as governmental defendants: (1) the United States Coast Guard, Department of Transportation; (2) the United States Army Corps of Engineers; (3) the National Ocean Survey; and (4) the National Oceanic and Atmospheric Administration. (Docs.1, 64, 137). The United States filed a single answer on behalf of all named federal defendants. (Doc. 6).

*United States,* 151 F.3d 1338, 1340 (11th Cir.1998). The ultimate burden of proof concerning the discretionary function exception appears to lie with the plaintiff, *OSI, Inc. v. United States,* 285 F.3d 947, 951 (11th Cir.2002),[2] but "[t]he allocation of burdens is not significant when the relevant facts are undisputed." *Hughes v. United States,* 110 F.3d 765, 768 (11th Cir.1997). Here, the undisputed facts clearly demonstrate that the exception applies.

■ The Supreme Court's most recent, and most thorough, explication of the discretionary function exception under the FTCA appears in *United States v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). As the Eleventh Circuit has observed, "[i]n *Gaubert,* the Supreme Court developed a two-step test to determine whether the government's conduct meets the discretionary function exception." *Miles v. Naval Aviation Museum Foundation, Inc.,* 289 F.3d 715, 720 (11th Cir.2002). First, the discretionary function exception cannot apply if governing statutes, regulations or policy dictate the government's course of action, for in that ·case there is no discretion to be exer-

cised. 499 U.S. at 324, 111 S.Ct. 1267. Second, the challenged discretionary act must be " 'of the kind that the discretionary function exception was designed to shield,' " that is, one " 'based on considerations of public policy.' " *Id.* at 322–23, 111 S.Ct. 1267 (quoting *United States v. Varig Airlines,* 467 U.S. 797, 813, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984) and *Berkovitz v. United States,* 486 U.S. 531, 537, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), respectively). As discussed below, the *Gaubert* test is met in this case.

■ "In order to aid navigation and to prevent disasters, collisions, and wrecks of vessels and aircraft, the Coast Guard *may* establish, maintain, and operate . . . aids to maritime navigation . . . ." 14 U.S.C. § 81 (emphasis added). Similarly, "[t]he Secretary *may* mark for the protection of navigation any sunken vessel or other obstruction existing on the navigable waters . . . ." *Id.* § 86 (emphasis added). The permissive term "may" confirms that Congress has not imposed on the Coast Guard a mandatory duty to mark hazards.[3]

Under *Gaubert,* an agency's regulations may so circumscribe the discretion dele-

2. But see *Mesa v. United States,* 123 F.3d 1435, 1439 n. 6 (11th Cir.1997)(declining to decide the burden of proof); *Hughes v. United States,* 110 F.3d 765, 768 (11th Cir. 1997)(same); *Autery v. United States,* 992 F.2d 1523, 1526 n. 6 (11th Cir.1993)(same).

3. *E.g., Indian Towing Co. v. United States,* 350 U.S. 61, 69, 76 S.Ct. 122, 100 L.Ed. 48 (1955)("The Coast Guard need not undertake the lighthouse service. But once it exercised its discretion to operate a light on Chandeleur Island and engendered reliance on the guidance afforded by the light, it was obligated to use due care to make certain that the light was kept in good working order . . . ."); *Drake Towing v. Meisner Marine Construction,* 765 F.2d at 1064 ("Under these principles, the initial decision to place aids to navigation

such as the temporary buoys in this case is within the Coast Guard's discretion.")(citing 14 U.S.C. § 81); *Tringali Brothers v. United States,* 630 F.2d 1089, 1090(5th Cir. 1980)("The Coast Guard has no statutory duty to place navigational aids in hazardous waterways but it is authorized to do so by 14 U.S.C. § 81 . . . ."); *accord Theriot v. United States,* 245 F.3d 388, 397 (5th Cir.1998); *Tew v. United States,* 86 F.3d 1003, 1006 (10th Cir. 1996); *Inland Tugs Co. v. Ohio River Co.,* 709 F.2d 1065, 1072 (6th Cir.1983); *Bearce v. United States,* 614 F.2d 556, 560 (7th Cir. 1980); *cf. Powers v. United States,* 996 F.2d 1121, 1125 (11th Cir.1993)(statutory language that agency director "shall from time to time take such action as may be necessary" satisfied the first *Gaubert* criterion).

gated by statute as to negate the element of choice required by the first criterion. 499 U.S. at 324, 111 S.Ct. 1267. Applicable Coast Guard regulations, however, reserve to the agency its range of choice: "The aids to navigation system is not intended to identify every shoal or obstruction to navigation which exists in the navigable waters of the United States, but rather provides for *reasonable* marking of marine features *as resources permit.*" 33 C.F.R. § 62.1(c)(2002)(emphasis added). Similarly, the Coast Guard "may mark for the protection of maritime navigation any structure, sunken vessel or other obstruction that is not adequately marked by the owner." *Id.* § 64.33(a) (emphasis added); *see also Lawson v. United States,* 124 F.3d 198, 1997 WL 530540 at *3 (6th Cir. 1997)("[T]he Coast Guard's own regulations do not undermine this discretion, nor do they mandate the placement of navigational aids in specific situations.").[4]

The Eleventh Circuit apparently has not decided a discretionary function case, in the context of the Coast Guard's permissive authority to place aids to navigation, since *Gaubert.* Other appellate courts, however, have done so, and all have easily concluded that decisions whether to place such aids satisfy the second *Gaubert* criterion.[5] In addition, the Eleventh Circuit has construed *Gaubert* as interpreting a prior Supreme Court opinion[6] as "involv[ing] discretion grounded in public policy considerations only at one level: whether the Coast Guard would undertake to operate the lighthouse." *Ochran v. United States,* 117 F.3d 495, 506 (11th Cir.1997). Moreover, the Eleventh Circuit has found the discretionary function exception to be applicable in almost every case it has considered since *Gaubert.*[7] Finally, even before *Gaubert* the Eleventh Circuit held that "[t]he initial decision to place

---

4. Nor has the plaintiff identified any internal agency guideline that could defeat the first element of the discretionary function exception. *See Theriot v. United States,* 245 F.3d at 398–99 (rejecting the plaintiffs' contention that a memorandum of agreement between the Coast Guard and the Corps of Engineers, similar in language to the regulations noted above, so limited the Coast Guard's options in identifying and responding to obstructions as to negate the first *Gaubert* criterion).

5. *See Theriot v. United States,* 245 F.3d at 399–400 (" [I]t is clear that the government's decision whether to place a warning sign or marker at the sill's location . . . was grounded in public policy considerations."); *Lawson v. United States,* 124 F.3d 198, 1997 WL 530540 at *4 ("Because of the importance of navigational aids and the legal restrictions surrounding the placement of navigational aids, we can only conclude that the Coast Guard's authority over those aids is one of public policy."); *Tew v. United States,* 86 F.3d at 1006 ("The Coast Guard's discretionary decision to leave the structure unmarked was properly grounded in public policy considerations.").

6. *Indian Towing Co. v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955).

7. *See OSI, Inc. v. United States,* 285 F.3d at 953 (Air Force's landfill disposal of waste); *Monzon v. United States,* 253 F.3d 567, 572 (11th Cir.2001)(National Weather Service's failure to warn of rip currents); *Mid–South Holding Co. v. United States,* 225 F.3d at 1202 (Coast Guard's and Customs Service's boarding and search of vessel); *Cohen v. United States,* 151 F.3d at 1343–44 (Bureau of Prisons' classification and placement of prisoners); *Mesa v. United States,* 123 F.3d at 1438 (Drug Enforcement Agency's decision how to locate and identify the subject of an arrest warrant); *Andrews v. United States,* 121 F.3d 1430, 1440 (11th Cir.1997)(Navy's decision to delegate waste control to a private concern); *Ochran v. United States,* 117 F.3d at 501–02 (Assistant United States Attorney's failure to protect a victim threatened by a suspected offender); *Hughes v. United States,* 110 F.3d at 768 (Postal Service's security measures); *Powers v. United States,* 996 F.2d at 1126 (Federal Emergency Management Agency's publicizing of the availability of flood insurance); *Autery v. United States,* 992 F.2d at 1531 (National Park Service's selection and execution of procedures for inspecting for hazardous trees). In the only known Eleventh Circuit cased rejecting the discretionary

aids in navigation ... is within the Coast Guard's discretion" because it implicates "[t]he balancing of policy considerations." *Drake Towing v. Meisner Marine Construction,* 765 F.2d at 1064.

An independent application of the policy-consideration analysis formulated in *Gaubert* confirms that the Coast Guard's decision whether to place an aid to navigation satisfies the second *Gaubert* criterion. Policy considerations may be social, economic or political. 499 U.S. at 323, 111 S.Ct. 1267. The relevant policy considerations may be established "by statute, regulation or agency guidelines." *Id.* at 324, 111 S.Ct. 1267. There need be no express statement of policy considerations in these sources as long as they can be "implied" from them. *Id.* Once these policy considerations are identified, there is a "strong presumption that a discretionary act authorized by the [statute or] regulation involves consideration of the same policies which led to the promulgation of the [statute or] regulation." *Id.* Moreover, because "[t]he focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis," *id.* at 325, 111 S.Ct. 1267, the presumption cannot be overcome by evidence that the government did not actually weigh the relevant policy considerations in making the challenged decision.[8] Finally, "[d]iscretionary conduct is not confined to the policy or planning level," but extends to the operational level. *Id.* at 325, 111 S.Ct. 1267.

As noted, Congress delegated to the Coast Guard discretion whether to place navigational aids, and the Coast Guard maintained that discretion in its regulations. By regulation, the Coast Guard has identified financial, manpower and other limits on "resources" as a policy consideration underlying its discretion. 33 C.F.R. § 62.1(c)(2002). Though alone insufficient to satisfy the second *Gaubert* criterion, resource considerations are relevant to the analysis. *Hughes v. United States,* 110 F.3d at 769.

The same regulation also specifies that, regardless of resource limitations, the Coast Guard will provide only such markings as are "reasonable" and will provide such markings with the "prudent mariner" in mind. 33 C.F.R. § 62.1(c)(2002). This language makes clear that the Coast Guard weighs a number of policy considerations in ascertaining whether to place navigational aids, so that only those hazards it deems sufficiently important to a cautious and competent mariner are eligible for marking. As summarized by the Fifth Circuit, such implied considerations include " 'the degree of danger an object poses, the vessel traffic type and density, the location of the object in relation to the navigable channel, the history of vessel accidents, [as well as] the feasibility and economics, including costs, of erecting and maintaining physical markers in light of the available resources.' " *Theriot v. United States,* 245 F.3d 388, 399–400 (5th Cir.1998)(quoting the trial court's opinion). These and other considerations are ex-

---

function exception since *Gaubert,* the exception foundered on the first criterion because the government actor had no discretion to begin with. *See Miles v. Naval Aviation Museum Foundation,* 289 F.3d at 722; *Ochran v. United States,* 117 F.3d at 504.

8. *E.g., OSI, Inc. v. United States,* 285 F.3d at 950–51 ("The exception does not require there to have been actual 'weighing of policy considerations.' ")(quoting *Hughes v. United States,* 110 F.3d at 768); *Ochran v. United States,* 117 F.3d at 501 ("[I]t is not relevant whether the government employee in fact made a policy judgment in this case.").

pressly listed in the Coast Guard's regulations for determining whether an obstruction represents a hazard to navigation suitable for marking. 33 C.F.R. 64.31 (2002). This statement of policy considerations satisfies the government's "burden of production of the policy considerations that might influence the challenged conduct." *Ochran v. United States,* 117 F.3d at 504 n. 4.[9]

Because statute and regulation, based on the policy considerations identified above, preserve the Coast Guard's discretion whether to place navigational aids, the decision not to place navigational aids in the Basin is strongly presumed to be grounded in those policy considerations, and neither the degree of actual consideration nor the rank of the decisionmaker can rebut the presumption.[10]

Because the decision whether to place an aid to navigation on its face satisfies *Gaubert,* "[f]or a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." 499 U.S. at 324–25, 111 S.Ct. 1267. Although the original and amended complaints allege no such facts, in brief the plaintiff argues that the discretionary function exception does not apply because the Coast Guard installed aids to navigation in the Channel leading to the Basin. Because the United States addresses the merits of the plaintiff's contention despite its absence from the pleadings, the Court will do likewise.

The plaintiff argues that the discretionary function exception does not apply when the Coast Guard "assumes a duty to place various aids to navigation in an area, but does so negligently, or in an incomplete manner, and fails to adequately mark the areas in question." (Doc. 117 at 2). For this proposition, the plaintiff relies exclusively on *Eklof Marine Corp. v. United States,* 762 F.2d 200 (2nd Cir.1985). In *Eklof,* the Coast Guard placed a single buoy to mark the southern end of a reef in the Hudson River. The Coast Guard was aware of the marine practice of passing such buoys close by to port due to the typical experience of finding deep water there, yet the Coast Guard positioned the buoy in shallow water. The plaintiff, following the usual practice and relying on the placement of the buoy, grounded in the shallows. *Id.* at 201–02. In language seized upon by the plaintiff here, the Second Circuit stated, "[w]e are persuaded that the Coast Guard, having undertaken to mark a hazard, is equally duty-bound to provide sufficient aids to mark the obstruction adequately and that the failure to do so also may result in liability." *Id.* at 203.

*Eklof,* properly understood, does not aid the plaintiff. As the Second Circuit explained at least three times, what triggered the Coast Guard's duty to mark the reef adequately was not simply its placement of a navigational aid, but its placement of a navigational aid that "engendered reliance" by mariners and "enticed [them] to enter upon a danger that other-

---

**9.** *Cf. Autery v. United States,* 992 F.2d at 1530 (finding the second *Gaubert* criterion satisfied because, "[g]enerally, courts have held that decisions about what safety measures to employ in national parks and how to execute them involve balancing ... safety, aesthetics, environmental impact, and available financial resources.").

**10.** Assuming that the discretionary function exception requires a deliberate decision not to place aids to navigation and not simply a failure to make a decision, the plaintiff concedes that the Coast Guard affirmatively decided not to place aids in the Basin. (Doc. 117 at 2; Carey Deposition at 198).

wise might have been avoided." 762 F.2d at 203.[11] The duty to place additional aids arose in *Eklof* only to counter the enhanced danger created by the mispositioned buoy.[12] The plaintiff here does not allege that the Coast Guard placed any navigational aid on which the Vessel relied and that enticed it into a danger it might otherwise have avoided. On the contrary, the Vessel's pilot admits that he did not rely on any navigational aid in determining how and where to perform his wheeling maneuver, (Cook Deposition at 124); indeed, there was no navigational aid visible from the Vessel during the maneuver.[13]

Even if *Eklof* could be read as imposing a duty to place additional navigational aids absent mariner reliance on an existing aid and an enhanced danger therefrom, it would be both factually and legally inapposite. Factually, *Eklof* applies only to the Coast Guard's treatment of a single "hazard," "obstruction" or "maritime danger." 762 F.2d at 202. In *Eklof,* that hazard was a particular reef in the Hudson River, and the duty imposed on the Coast Guard by its mispositioning of the buoy extended only to the marking of that hazard. The alleged hazard here is the sloping east wall of the Basin and/or a dredge pipe submerged in or along the wall. While the plaintiff argues that *Eklof* is triggered by the Coast Guard's marking of the Channel east of the Basin, the Channel and its walls constitute a different hazard—indeed, a different waterway—than the Basin.[14]

Legally, *Eklof* was decided before *Gaubert* and does not follow the analysis required by that decision. Because the same policy considerations that underlie the decision *whether* to mark a hazard also underlie the decision *how* to do so, it is doubtful that *Eklof,* to the extent not based on mariners' detrimental reliance as in *Indian Towing,* could survive scrutiny under *Gaubert. See Lawson v. United States,* 1997 WL 530540 at *5 (rejecting *Eklof* because "we conclude that the decision to place only two navigational aids on the Lorain breakwater remains part of the

11. *See also id.* at 202–03 ("[i]t is reliance that gives rise to the Coast Guard's duty," so that the Coast Guard must mark a hazard "in a way that does not create a new hazard" when relied on by mariners); *id.* at 203 ("[O]nce the Coast Guard acts, and causes others justifiably to rely on such action, a duty arises to act reasonably and with due care to prevent a navigational aid from becoming 'a trap for the ignorant or unwary rather than a warning of danger.' ")(quoting *Somerset Seafood Co. v. United States,* 193 F.2d 631, 635 (4th Cir. 1951)).

12. *Eklof* is thus consistent with *Indian Towing.* There, the Supreme Court held that the Coast Guard could be held liable for its negligence in failing to keep a lighthouse light functional, because its installation and operation of the lighthouse "engendered reliance on the guidance afforded by the light," creating a new danger when the light was allowed to remain extinguished without warning to mariners. 350 U.S. at 69, 76 S.Ct. 122.

13. The plaintiff suggests the Coast Guard had placed a buoy marking the northeast corner of the Basin, where the Channel enters from the east. (Doc. 117 at 8). In fact, this marker was placed *after* the incident in question. (Carey Deposition at 201–02 & Exhibit 42; Cook Deposition at 124–25). Elsewhere, the plaintiff admits that there were no aids to navigation in the Basin in March 2001. (Doc. 117 at 7).

14. The plaintiff's description of the Basin and its "approaches" (i.e., the Channel) as a single "area" does not disguise this fact. Under the plaintiff's tortured reasoning, the placement of a single navigational aid in Mobile Bay would, of itself, impose a duty on the Coast Guard to fully mark not only the Bay but also the Channel, Dog River, Fowl River and the Alabama River, because all adjoin the Bay.

Coast Guard's discretionary authority."); *see also Autery v. United States,* 992 F.2d at 1530 (what safety measures to employ in national parks "and how to execute them"involved a balancing of policy considerations and are thus protected by the discretionary function exception).[15]

Seeking to stave off dismissal, the plaintiff has belatedly filed a "Rule 56(f) Statement." (Doc. 162). The plaintiff therein argues that it is in need of discovery before it can adequately respond to the motion to dismiss. In particular, the plaintiff seeks discovery concerning the Coast Guard's knowledge of water depths, the decision whether to mark the area, and communications with the Corps of Engineers concerning the design, layout and placement of navigational aids. (*Id.,* ¶ 4). As the foregoing discussion should make clear, none of this discovery could possibly alter the conclusion that the Coast Guard is protected by the discretionary function exception. Accordingly, the plaintiff's request for a 90–day delay in ruling on the motion to dismiss, (*id.,* ¶ 6), is **denied.**

### CONCLUSION

For the reasons set forth above, the United States' motion to dismiss is **granted.**

---

**15.** Two post-*Gaubert* cases from the Eleventh Circuit that allowed claims against the Coast Guard for negligent placement of buoys apparently are based on *Indian Towing,* which both cited. *See United States Fire Insurance v. United States,* 806 F.2d at 1532–34, 1536 (the Coast Guard failed to place a temporary buoy channelward of the missing permanent marker, thereby steering the plaintiff's vessel into the submerged remains of the missing marker); *Drake Towing v. Meisner Marine Construction,* 765 F.2d at 1062–64 (following Hurricane Frederick, the Coast Guard placed new channel-marking buoys farther apart than the previous buoys, thereby steering the plaintiff's vessel into submerged bridge debris lying outside the previous markers). To the extent these cases are not based on *Indian Towing,* they, like *Eklof,* are of questionable authority after *Gaubert.*